UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE J. HOLCOMB, JR., | : | CIVIL NO: 1:20-CV-1176 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting* | : | |
| *Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Lee J. Holcomb, Jr. ("Holcomb"), seeks judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying his

claim for disability insurance benefits under Title II of the Social Security Act.  We

have jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, the

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1* to *13-10*.[2]  On June 19, 2019, Holcomb protectively filed[3] an application for disability insurance benefits, alleging that he has been disabled since May 24, 2019. *Admin. Tr.* at 174–75.  After the Commissioner denied his claim at the initial level of administrative review, Holcomb requested an administrative hearing. *Id.* at 104, 115.  And on January 23, 2020, Holcomb, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Mike Oleyar. *Id.* at 51–70.

The ALJ determined that Holcomb had not been disabled from May 24, 2019 (the alleged onset date), through February 5, 2020 (the date of the decision). *Id.* at 45.  And so, he denied Holcomb benefits. *Id.*  Holcomb appealed the ALJ's decision to the Appeals Council, which denied his request for review on May 11,

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Holcomb's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

2020. *Id*. at 20–22.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On July 10, 2020, Holcomb, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not in accordance with the law and is not supported by substantial evidence. *Doc. 1* ¶ 5.  Holcomb requests that the court set aside the Commissioner's determination and award him disability benefits. *Id*. at 2 (Wherefore Clause).  In the alternative, he requests that the court remand the case to the Commissioner for further proceedings, award attorney's fees, and grant him other relief that is deemed just and proper. *Id*.

The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 12, 13*.  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 18*.  The parties then filed briefs, *see docs. 19, 20*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Holcomb was disabled, but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is

under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Holcomb met the insured-status requirements through December 31, 2023. *Admin. Tr.* at 36.

(quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

7

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).


## IV.  The ALJ's Decision.

On February 5, 2020, the ALJ denied Holcomb's claim for benefits. *Admin. Tr.* at 34–45.  At step one of the sequential-evaluation process, the ALJ found that Holcomb had not engaged in substantial gainful activity since May 24, 2019, his alleged onset date. *Id.* at 36.

At step two of the sequential-evaluation process, the ALJ found that Holcomb had the following severe impairments: "history of traumatic brain injury, cervical and lumbar degenerative disc disease, cervical and lumbar radiculopathy, lumbar disc prolapse, paralysis of upper radicular nerve group and sciatic nerves, migraines, chronic post traumatic headaches, obesity, obstructive sleep apnea, tinnitus and impaired hearing, anxiety and major depressive disorder." *Id.* at 36. The ALJ also noted that Holcomb had hypertension, but it was non-severe because Holcomb "was only briefly taking medication for his hypertension and instead his blood pressure has been below his provider's goal of 140/90 on a consistent basis," and that no documentation supports any functional limitations caused by the

hypertension. *Id.* at 37 (citations to the record omitted).[5]  The ALJ then stated that Holcomb's bilateral plantar fasciitis, history of left knee arthroscopy, and right inguinal hernia are non-severe physical impairments because the medical records do not support any functional limitations caused by those impairments. *Id.*  He further noted that although Holcomb was diagnosed and treated for pneumonia and tooth extraction, those conditions were not severe impairments. *Id.*  His determination was based on the duration and frequency of the treatment that Holcomb sought in connection to those impairments, and because Holcomb "did not allege any limitations caused by these conditions in either his function report or his hearing testimony." *Id.*

At step three of the sequential-evaluation process, the ALJ found that Holcomb did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*  More specifically, the ALJ discussed Listing 1.04 and Listing 3.02, and he determined that Holcomb did not meet those listings. *Id.*  The ALJ also observed that there is not a listing for migraine headaches, but he nonetheless considered listing 11.00, which pertains to the neurological system, and he determined that Holcomb did not meet that listing. *Id.* at 38.  In connection to Holcomb's obesity,

---

[5] For readability, here, as elsewhere, we omit citations to the record when quoting the ALJ's decision.

the ALJ evaluated the adverse impact Holcomb's obesity had on his co-existing impairments, but the ALJ determined that the evidence did not support a finding that Holcomb "meets or equals the criteria of a listing." *Id.*  And in connection with Holcomb's mental impairments, the ALJ considered Listings 12.04 and 12.06. *Id.* The ALJ determined that Holcomb did not meet either of those listings. *Id.*

The ALJ then determined that Holcomb has the RFC to perform light work[6] with some limitations. *Id.* at 40–43.  The ALJ stated:

> [Holcomb] is limited to occupations that require no more than frequent use of foot controls with the bilateral lower extremities. [He] is also limited to occupations that require no more than frequent reaching, handling, fingering, and feeling with his bilateral upper extremities.  [He] is limited to occupations that require [no][7] more than occasional balancing, stooping, kneeling, crouching, crawling,

---

[6] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

[7] Although the ALJ states that Holcomb "is limited to occupations that require more than occasional . . . ," *Admin. Tr.* at 40, we construe this to be a typo and assume that the report is intended to read that Holcomb "is limited to occupations that require *no* more than occasional . . . ."  Our assumption is based on the hypothetical that the ALJ posed to the vocational expert in which he limited a hypothetical individual to "occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs." *Id.* at 71–72.

and climbing on ramps and stairs, but never climbing on ladders, ropes, or scaffolds. [Holcomb] is limited to occupations that require no more than frequent operation of a motor vehicle. [He] is limited to occupations that never require having exposure to atmospheric conditions such as extreme cold, heat, wetness or humidity. [He] is limited to occupations that require no more than exposure to moderate noise level.[8] [Holcomb] is limited to occupations that never require exposure to vibrations and hazards such as unprotected heights and dangerous moving mechanical parts. [He] is limited to occupations that require no more than frequent interactions with supervisors, coworkers and the public. [He] is limited to occupations that require him to perform no more than simple and routine tasks, and does not require him to work at an [sic] production rate pace such as assembly line work. [Holcomb] is limited to occupations that require no more than simple work related decisions with occasional changes in the work setting.

*Id.* at 40. In making this determination, the ALJ considered Holcomb's medical records, daily activities, and assertions and testimony regarding his impairments and limitations. *Id.* at 41–42. He also considered the medical opinions regarding Holcomb's alleged disability, and the VA's "evaluation for service related disability that found him 100 percent disabled." *Id.* at 42–43.

At step four of the sequential-evaluation process, the ALJ found that Holcomb is unable to do his past relevant work as a parole officer. *Id.* at 43.

At step five of the sequential-evaluation process, considering Holcomb's age, education, work experience, and RFC, as well as the testimony of a vocational

---

[8] Although it is unclear as to what the ALJ means when he says that Holcomb "is limited to occupations that require no more than exposure to moderate noise level," *Admin. Tr.* at 40, Holcomb does not raise this issue in his brief, so we will not delve into it any further.

expert, the ALJ found that there were jobs—such as an office/hotel cleaner, small product assembler, and clerical assistant—that exist in significant numbers in the national economy that Holcomb could perform. *Id.* at 44.

In sum, the ALJ concluded that Holcomb was not disabled from May 24, 2019, through the date of his decision on February 5, 2020. *Id.* at 45.  Thus, he denied Holcomb's claim for disability insurance benefits. *Id.*

## V. Discussion.

Holcomb claims that the ALJ erred and abused his discretion: (1) by determining that Holcomb has the RFC to perform light work; (2) by failing to find Holcomb's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms" not entirely consistent with the evidence in the record; and (3) by failing to find Holcomb's RFC "to be less than sedentary." *Doc. 19* at 9–10. We will start by addressing the first and third claims.  These claims are separate but interconnected; they are both based on the ALJ's handling of Holcomb's RFC. As such, we will address these claims together.  Then, we will address Holcomb's second claim, which involves the ALJ's handling of his reported symptoms.

## A.   The ALJ's RFC determination is supported by substantial evidence.

As set forth above, Holcomb's first and third claims concern the ALJ's RFC determination.  He claims that the ALJ erred and abused his discretion in formulating his RFC by (1) finding that Holcomb has the RFC to perform light work, and by (2) not finding Holcomb's RFC to be less than sedentary.  Because both contentions concern the physical exertion portion of the RFC, we address them together.

Holcomb contends that the ALJ erred by limiting him to light work rather than "less than sedentary" work. *Doc. 19* at 16.  In his brief, Holcomb refers to hearing testimony in which he indicated that he suffers from migraine headaches three to four times per month, which are sometimes "debilitating." *Id.* at 12.  He contends that the medical records support his testimony, and that "when you take into consideration all of the other impairments that [he] is suffering from, it is perplexing to think that [he] could perform light work." *Id.*  Holcomb goes on to say, "Couple in the claimant's history of traumatic brain injury, anxiety and major depressive disorder and you have a gentleman who cannot perform at the RFC" listed by the ALJ, nor can he "perform any type of gainful employment and is disabled." *Id.*  Holcomb also references that during the hearing, he had to "stand after only 20 minutes of sitting due to pain and numbness," and in that regard, he contends that he is unable to perform light work and "is totally disabled and unable

13

to perform any employment." *Id.* at 18–19.  Given that Holcomb's argument rests on the ALJ's RFC determination, we set forth the framework that the court must follow in evaluating the ALJ's RFC determination.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

14

Further, in setting the RFC, the ALJ must clearly articulate his or her reasoning.  In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).  Applying the above standard to the present record, we conclude that the ALJ's RFC determination is supported by substantial evidence.

Over the span of nearly four pages, the ALJ thoroughly explained his decision to limit Holcomb to light work with some limitations. *Admin. Tr.* at 40–43.  In making his RFC assessment, the ALJ reviewed Holcomb's assertions and testimony regarding his impairments and limitations.  He noted that Holcomb

claims "that he is unable to work because a traumatic brain injury, major

depression, migraines, back and neck problems, and numbness in his hands." *Id.* at

41.  The ALJ also noted that Holcomb alleges "that his ability to lift, squat, bend,

stand, walk, sit, kneel, stair climb, remember, complet[e] tasks, concentrate,

understand, follow instruction, use hands and get along with others is affected." *Id.*

Holcomb testified that "he has difficulty handling objects due to hand numbness."

*Id.*  Although the ALJ determined that Holcomb's medically determinable

impairments could reasonably be expected to cause the alleged symptoms, he

concluded that Holcomb's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record." *Id.*

The ALJ also reviewed Holcomb's medical records in conjunction with his

testimony.  In this regard, the ALJ stated that Holcomb "served as a paratrooper in

the U.S. Army from 1991 to 1994," where he suffered "a traumatic brain injury

because he hit his head during a hard landing." *Id.*  And he also noted that

Holcomb "routinely reported that he experiences headaches and then migraines as

a result of this injury." *Id.*  Holcomb "also reported sensitivity to sound due to

tinnitus and impaired hearing and has been treated for obstructive sleep apnea." *Id.*

But "[j]ust prior to the alleged onset date, his primary care records show that [he]

reported that while he does experience 2 to 3 headaches per month that can last up

16

to two days, these headaches are not incapacitating." *Id.* The ALJ also noted that the record shows that Holcomb did not seek neurological treatment since the alleged onset date. *Id.* He further notes that while "an MRI report from June 3, 2019 showed that [Holcomb] still had mild brain atrophy that was slightly more than expected for his age," his "neurological records show that the migraines were not diagnosed as intractable." *Id.* The ALJ also opined that Holcomb's medication was adjusted to reflect "moderate improvement of symptoms." *Id.*

The ALJ then considered the medical records relating to Holcomb's assertion that "he experiences back pain and numbness in all his extremities." *Id.* In this regard, the ALJ noted that the "medical records show that [Holcomb] has been diagnosed with cervical and lumbar degenerative disc disease and obesity, with a body mass index of 34" *Id.* And while an x-ray from March 2019, revealed that Holcomb had cervical degenerative disc disease, an x-ray of his lumbar spine from May 2019, was unremarkable. *Id.* The ALJ further noted that a physical-therapy evaluation indicated that Holcomb had decreased strength and range of motion in his extremities, but subsequent neurological examinations were unremarkable. *Id.* at 42.

The ALJ also considered the medical records relating to Holcomb's testimony that he experiences "depression and anxiety on a regular basis." *Id.* In this regard, the ALJ noted that "the medical records show that [Holcomb's] mental

health treatment has been very conservative both prior to and after the alleged onset date." *Id.* And despite a psychiatric evaluation indicating that Holcomb reported being "adverse to crowds and a prior history of panic attacks," Holcomb reported that "his last panic attack was years ago." *Id.*

And the ALJ observed that Holcomb's statements "about the intensity, persistence, and limiting effects of his symptoms" are not consistent with his daily activities. The ALJ reported that although Holcomb "testified to being severely restricted due to his pain, his wife noted in her third party function report that he is able to do housework like dishes and laundry." *Id.* Holcomb also acknowledged that "he is able to drive a car, operate a computer, go into the community and handle his finances by himself." *Id.* The ALJ opined that while none of those activities are dispositive, "taken together and considered in conjunction with [the] above medical evidence of record, they suggest" that Holcomb can perform work within the parameters as prescribed by the ALJ. *Id.*

The ALJ also considered the medical opinions regarding Holcomb's alleged disability. He first considered the opinion of Dr. Crecenzo Calise, a state agency physician. Dr. Calise suggested that Holcomb "would be limited to a reduced range of light work with both postural and environmental limitations." *Id.* The ALJ found Dr. Calise's opinion persuasive, because the medical records establish

that Holcomb "has not required an additional level of pain management subsequent to the initial determination." *Id.* at 42–43.

The ALJ then considered the opinion of Dr. Paul Taren.  Dr. Taren opined that Holcomb had several functional limitations regarding his ability to "maintain attention and concentration for extended periods," get along with others "without distracting them or exhibiting behavioral extremes," and "respond appropriately to changes in the work setting." *Id.* at 43.  The ALJ found Dr. Taren's opinion persuasive because it was "consistent with the evidence obtained at the hearing level, including [Holcomb's] testimony." *Id.*  The ALJ then opined that Dr. Taren's opinion was "mirrored" by the opinion of Dr. Anthony Galdieri. *Id.*

Finally, the ALJ "considered the results of [Holcomb's] VA evaluation for service related disability that found him 100 percent disabled as of November 20, 2019." *Id.*  The ALJ noted that disability status is an issue reserved for the SSA Commissioner and that SSA regulations for disability "differ significantly from the VA regulations for disability." *Id.*  Nevertheless, the ALJ considered the VA's determination when crafting Holcomb's RFC. *Id.*

To support his argument that the ALJ erred in concluding that he could do light work, Holcomb relies on hypotheticals the ALJ presented to the vocational expert.  At the hearing, the ALJ presented three hypotheticals to the vocational expert.  The first hypothetical stated:

19

> [A]ssume a hypothetical individual as the same age, education, and
> work experience as the claimant; would be limited to the light
> exertion; frequently using foot controls with the bilateral upper
> extremities; occasional balancing, stooping, kneeling, crouching,
> crawling, climbing ramps and stairs; never climbing ladders, ropes, or
> scaffolds; frequently operating a motor vehicle; never exposure to
> atmospheric conditions, extreme cold, heat wetness, or humidity;
> moderate . . . noise; never exposure to vibration and hazards such as
> unprotected heights or dangerous moving mechanical parts; limited to
> frequent interaction with supervisors, coworkers, and the public;
> limited to perform simple, routine tasks, but not at a production rate
> pace such as assembly line work; and limited to simple, work-related
> decisions with occasional changes in the work setting.  Based upon
> those limitations, the past work would be eliminated.  Is that correct?

*Id.* at 71–72.  The vocational expert replied, "[c]orrect," and then listed jobs,

including an office cleaner or hotel room cleaner, that someone with the

hypothetical limitations could perform. *Id.* at 72.  The second hypothetical the ALJ

presented was: "[A]ssume a hypothetical individual with the same limits as in that

first hypothetical except would be limited to the sedentary exertion and would

require a sit/stand option every 30 minutes.  Based upon those limitations, would

there be any sedentary positions in the national economy?" *Id.* at 73.  The

vocational expert stated that there would be jobs with those limitations, including

an envelope addresser and assembler of optical goods. *Id.*  The third hypothetical

stated:

> [S]ame limitations as in that second hypothetical at sedentary except,
> in addition to normal breaks and lunch, the claimant would be off task
> 20 percent of the time in an 8-hour workday; would require 2
> unscheduled breaks of up to 30 minutes in an 8-hour workday; and
> would be absent from work 2 or more days per month.  Based upon

those three additional limitations of off tasks, unscheduled breaks, and
absenteeism, would that prohibit all work?

*Id.* And the vocational expert indicated that those limitations would prohibit all

work. *Id.*

Holcomb argues that "[t]he third hypothetical is the correct one, which

would preclude the claimant for all work" and would render him "totally disabled."

*Doc. 19* at 18. But the ALJ adopted the limitations and impairments presented in

the first hypothetical and determined that Holcomb was limited to light work.

Holcomb offers little basis for why the ALJ should have chosen the third

hypothetical. He briefly states that he should be precluded from all work because:

> No employer would tolerate their employees to take [sic] unscheduled
> breaks, be off task as a result of impairments (in this case due to
> migraine headaches, traumatic brain jury residuals, pain in legs, back
> and neck and anxiety and depressive disorder) and to miss excessive
> amounts of time from the workplace.

*Id.* As recounted above, however, the ALJ sufficiently addressed Holcomb's

migraine headaches, brain injury, anxiety, and additional residual impairments in

limiting him to light work. And the ALJ did not fully credit all the limitations

Holcomb alleged to have regarding those impairments. "While the ALJ may

proffer a variety of assumptions to the expert, the vocational expert's testimony

concerning a claimant's ability to perform alternative employment may only be

considered for purposes of determining disability if the question accurately

portrays the claimant's individual physical and mental impairments." *Podedworney*

*v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  But an ALJ is not required to accept a vocational expert's opinion or testimony if that opinion is premised on limitations that the ALJ did not accept. *See Craigie v. Bowen*, 835 F.2d 56, 57–58 (3d Cir. 1987).

Based on the ALJ's comprehensive analysis and because he considered all the evidence of the record, the ALJ's RFC assessment that Holcomb could do light work is supported by substantial evidence.  And because he did not err in concluding that Holcomb could do light work, he did not err in failing to credit the vocational expert's response to a hypothetical question that presented Holcomb to be more limited than the ALJ determined him to be.

### B. The ALJ's evaluation of Holcomb's reported symptoms is supported by substantial evidence.

Holcomb also contends that the ALJ erred "in not finding that the claimant's pain was severe in intensity, persistence, and limiting his ability to work on a regular and sustained basis." *Doc. 19.* at 13.  The basis for Holcomb's argument is that the ALJ erroneously found that Holcomb's "statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] are not entirely consistent with the medical evidence and other evidence in the records." *Id.*

22

"An ALJ must carefully consider a claimant's statements about [his] symptoms, but the ALJ is not required to credit them." *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245 (3d Cir. 2020) (internal citations and quotation marks omitted). "The framework for evaluating a claimant's reported symptoms is set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p." *Falardo-Weller v. Saul*, No. 1:18-CV-1719, 2020 WL 2542222, at *3 (M.D. Pa. May 19, 2020). "When evaluating a claimant's symptoms, the ALJ must follow a two-step process." *Id*. "The ALJ must first ask whether the claimant has a medically determinable impairment that 'could reasonably be expected to produce [the claimant's] alleged symptoms.'" *Id*. (quoting 20 C.F.R. § 404.1529(b)). "If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities." *Wilson v. Kijakazi*, No. 4:20-CV-944, 2022 WL 676279, at *15 (M.D. Pa. Mar. 7, 2022). But if there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, "the ALJ must evaluate the 'intensity and persistence' of those symptoms to determine how, if at all, they limit the claimant's capacity for work." *Falardo-Weller*, 2020 WL 2542222, at *3.

Here, that ALJ found that Holcomb's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms[.]" *Admin. Tr.* at 41.

23

But the ALJ concluded that Holcomb's "statements concerning the intensity,
persistence and limiting effects of those symptoms are not entirely consistent with
the medical evidence and other evidence in the record for the reasons explained in
this decision." *Id.*

"In evaluating the intensity and persistence of a claimant's alleged
symptoms, the ALJ is required to 'consider all of the available evidence, including
. . . medical history, the medical signs and laboratory findings, and statements
about how . . . symptoms affect' the claimant." *Falardo-Weller*, 2020 WL
2542222, at *3 (quoting 20 C.F.R. § 404.1529(a)). "The Social Security
Administration has recognized that individuals may experience their symptoms
differently and may be limited by their symptoms to a greater or lesser extent than
other individuals with the same medical impairments, signs, and laboratory
findings." *Sager v. Kijakazi*, No. 3:21-CV-100, 2022 WL 773917, at *12 (M.D. Pa.
Feb. 11, 2022), *report and recommendation adopted*, 2022 WL 757237, at *1
(M.D. Pa. Mar. 11, 2022). "Thus, to assist in the evaluation of a claimant's
subjective symptoms, the Social Security Regulations identify seven factors which
may be relevant to the assessment of the severity or limiting effects of a claimant's
impairment based on a claimant's symptoms." *Id.* (citing 20 C.F.R.
§§ 404.1529(c)(3), 416.929(c)(3)). "These factors include: activities of daily
living; the location, duration, frequency, and intensity of the claimant's symptoms;

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions." *Id*.

"An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Wilson*, 2022 WL 676279, at *16.[9] But "[a]n ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason." *Id*.

Applying the above standards to the present record, we conclude that the ALJ's analysis of Holcomb's symptoms is supported by substantial evidence. As detailed above, the ALJ considered Holcomb's statements concerning the intensity, persistence, and limiting effects of his symptoms in light of the medical opinions and Holcomb's daily activities and medical record. The ALJ amply explains his reasons for finding Holcomb's statements concerning the intensity, persistence,

---

[9] Although evaluation of a claimant's alleged symptoms may involve an evaluation of the claimant's credibility regarding the limiting effects of those symptoms, SSR 16-3p eliminated the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029 at *1.

and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence in the record.  In sum, for the reasons set forth above, the ALJ adequately explained his credibility determination, and the ALJ's decision is support by substantial evidence.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and judgment will be entered in favor of the Commissioner.  An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge